**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Thomas A. Reyda (State Bar No. 312632)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
          jsmith@bursor.com
          treyda@bursor.com

**REICH RADCLIFFE & HOOVER LLP**
Marc G. Reich (State Bar No. 159936)
Adam T. Hoover (State Bar No. 243226)
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Telephone: (949) 975-0512
Email: mgr@reichradcliffe.com
          adhoover@reichradcliffe.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEARMEY on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HAWAIIAN ISLES KONA COFFEE COMPANY, LTD.<br><br>Defendant. | Case No.  8:19-cv-00432<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1    Plaintiff Michael DeArmey ("Plaintiff"), individually and on behalf of other

2    similarly situated individuals, brings the following Class Action Complaint against

3    Defendant Hawaiian Isles Kona Coffee Company, LTD. ("Hawaiian Isles" or

4    Defendant) seeking monetary damages, injunctive relief, and other remedies.  Plaintiff

5    makes the following allegations based on the investigation of his counsel and on

6    information and belief, except as to allegations pertaining to Plaintiff individually,

7    which is based on his personal knowledge.

8                                    **INTRODUCTION**

9        1.    Through false and deceptive packaging and advertising, Defendant

10   intentionally misleads consumers into believing that coffee products it sells bearing

11   the word Kona originate from the Kona District of the Big Island of Hawaii (the

12   "Kona District").  In reality, these coffee products are made with commodity coffee

13   beans grown in various less-desirable locations around the world.

14       2.    The falsely advertised coffee at issue in this action include, but are not

15   limited to, "Kona Classic," "Kona Sunrise," "Kona Hazelnut," and "Kona Vanilla

16   Macadamia Nut" coffee products (hereinafter, referred to as the "Kona Labeled Coffee

17   Products" or "Products").

18       3.    At all relevant times, Defendant packaged, advertised, marketed,

19   distributed, and sold the Kona Labeled Coffee Products to consumers via retail stores

20   throughout the United States based on the misrepresentation that the Products are

21   grown in, and originate from, the Kona District.  However, none of the Kona Labeled

22   Products are grown in the Kona District.

23       4.    Kona coffee, renowned for its distinctive flavor and aroma, is one of the

24   most famous and revered specialty coffees in the world.  But only coffee grown on

25   farms located within the Kona District of the Big Island of Hawaii can be truthfully

26   marketed, labeled, and sold as Kona coffee.  The volcanic soil, the elevation, and the

27   humidity of this region combine to give Kona coffee its distinctive characteristics.

28

CLASS ACTION COMPLAINT                                                          1

The term "Kona" tells consumers its coffee comes from this distinctive geographic region.

5.     Plaintiff and other consumers purchased the Kona Labeled Coffee Products because they reasonably believed, based on Defendant's packaging and advertising that the Products are grown in the Kona District.  Had Plaintiff and other consumers known that the Kona Labeled Coffee Products were not grown in the Kona District, they would not have purchased the Products or would have paid significantly less for them.  As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

6.     Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the Kona Labeled Coffee Products during the relevant statute of limitations period for violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.,* violation of California's False Advertising Law ("FAL"), for common law fraud, unjust enrichment, breach of implied warranty of merchantability, and breach of express warranty.

7.     Plaintiff seeks to represent a Nationwide Class, and a California Subclass.

8.     As a result of the unlawful scheme alleged herein, Defendant has been able to overcharge Plaintiff and other consumers for coffee, induce purchases that would otherwise not have occurred, and/or obtain wrongful profits.  Defendant's misconduct has caused Plaintiff and other consumers to suffer monetary damages. Plaintiff, on behalf themselves and other similarly situated consumers, seek damages, restitution, declaratory and injunctive relief, and all other remedies provided by applicable law or this Court deems appropriate.

**JURISDICTION AND VENUE**

9.     This Court has personal jurisdiction over Defendant.  Defendant purposefully avails itself of the California consumer market and distributes the Products to numerous locations within this County and hundreds of retail locations throughout California, where the Products are purchased by thousands of consumers every week.

10.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

11.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information and omissions regarding the Kona Labeled Coffee Products occurred within this District.

**PARTIES**

12.     Plaintiff Michael DeArmey is a resident of Mission Viejo, California and at all times material hereto, was a citizen of California.  During the relevant class period, he has regularly purchased the Kona Labeled Coffee Products, including but not limited to the "Kona Classic" brand, every 3 to 4 months from grocery stores located in Orange County, California.

13.     In purchasing the Kona Labeled Coffee Products, Mr. DeArmey saw and relied on Defendant's false, misleading, and deceptive use of the word "Kona" on the

packaging of the Kona Labeled Coffee Products.  Based on these representations, Mr. DeArmey believed that each of the Kona Labeled Coffee Products he purchased was grown in the Kona District on the Big Island of Hawaii.  However, unbeknownst to Mr. DeArmey, the Kona Labeled Coffee Products he purchased were not grown in, and did not originate from, the Kona District, but were instead made from commodity coffee beans sourced from various less-desirable locations around the world.

14.    Mr. DeArmey would not have purchased the Kona Labeled Coffee Products or would have paid significantly less for the Products had he known that the Products were not grown in the Kona District.  Therefore, Mr. DeArmey suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and fraudulent practices, as described herein.  Despite being misled by Defendant, Mr. DeArmey remains interested in purchasing the Kona Labeled Coffee Products if they were grown in the Kona District of Hawaii.  To this day, Mr. DeArmey regularly shops at stores where the Kona Labeled Coffee Products are sold.  On some of these occasions, Mr. DeArmey would like to buy the Kona Labeled Coffee Products but refrains from doing so because he cannot rely with any confidence on Defendant's representations regarding the Kona District origin of the Products, especially since he was deceived in the past by Defendant.  While Mr. DeArmey currently believes that the Kona Labeled Coffee Products are not grown in the Kona District of Hawaii, he lacks personal knowledge as to Defendant's growing practices, which may change over time, leaving room for doubt in his mind as to which Products are grown in Hawaii.  This uncertainty, coupled with his desire to purchase coffee grown in the Kona District, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the false and/or misleading representations alleged herein.

15.    Defendant Hawaiian Isles Kona Coffee Company, LTD. ("Hawaiian Isles" or "Defendant"), is a Hawaii limited liability company with its principal place of

business in Honolulu, Hawaii.  Hawaiian Isles sells a variety of coffee products throughout the United States, including this Judicial District, through various retail outlets, including but not limited to Cost Plus World Market, Lucky, Nob Hill Foods, Raley's, Save Mart Supermarkets, Kroger, Safeway, Albertsons, ABC Stores, Amazon, and Walmart.  Hawaiian Isles falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of "Kona" on the front of the packaging.  Hawaiian Isles advertises its coffee products nationally on the Internet and with digital marketing campaigns through social media sites such as Facebook.

## FACTUAL ALLEGATIONS

**A.    Background**

16.    Kona coffee is one of the rarest and most prized coffees in the world. Kona coffee is grown in the Kona District on the Big Island of Hawaii (the "Kona District").  *See* map below.  *See also* Hawaii Administrative Rules ("HAR") §4-143-3 (defining the geographic region of Kona as the "North Kona and South Kona districts on the island of Hawaii, as designated by the State of Hawaii Tax Map").  The Kona District contains only 3,800 acres of land cultivated for Kona coffee production, which sharply limits the amount of Kona coffee that can be grown.



**Figure 1**

17.     Just as only sparkling wine originating from the Champagne region of France can be sold as "Champagne," only coffee grown in the Kona District can be sold as Kona coffee.  *See, e.g.,* HAR §4-143-3 ("'Kona coffee' means natural coffee … which is grown in the geographic region of Kona and which at least meets the minimum requirements of Kona prime green coffee.").  Coffee grown outside of the Kona District, even if grown within the state of Hawaii, cannot be sold as Kona coffee. *See, e.g.,* HAR §4-143-1 ("The use of any geographic origin defined in section 4-143-3 [on coffee] that is not grown in the geographic region defined in section 4-143-3 is prohibited.").

18.     Kona coffee has been grown in the Kona District since 1828.  The Kona District's volcanic soil, elevation, rainfall, proximity to the Pacific Ocean, moderate temperatures, and sunshine all interact to create Kona coffee's distinctive characteristics. Kona coffee's unique flavor, aroma, and mouth feel are a direct result of this growing environment.

19.     The Kona name tells consumers that they are buying coffee grown in the Kona District.  The name also tells consumers that the coffee has a distinctive flavor profile, and that the beans are of the highest quality.  Consequently, consumers have been willing to pay a premium for Kona coffee.

20.     Within the Kona District, between 600 and 1,000 farmers grow Kona coffee beans.  The typical Kona farmer cultivates no more than five acres, which is a very small farming operation.  These farms typically operate as family businesses.

21.     Kona farmers produce approximately 2.7 million pounds of green Kona coffee each year.  That compares to 20 billion pounds of green coffee produced worldwide.  In other words, authentic Kona represents approximately 0.01% of worldwide coffee production.  It is truly a premium product.

22.     But even though only **2.7** million pounds of authentic green Kona coffee is grown annually, over **20** million pounds of coffee labeled as "Kona" is sold at retail. That is physically impossible.

23.     Defendant sells packaged coffee products that are presented to consumers as Kona coffee, but that actually contain cheap commodity coffee beans.  Some packages contain trace amount of Kona coffee, while other packages contain no Kona coffee at all.

24.     The malicious actions taken by Defendant causes significant harm to consumers.  Plaintiff and other consumers purchased the Kona Labeled Coffee Products because they reasonably believed, based on Defendant's packaging and advertising that the Products are grown in the Kona District.  Had Plaintiff and other consumers known that the Kona Labeled Coffee Products were not grown in the Kona District, they would not have purchased the Products or would have paid significantly less for them.  As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

**B.    Elemental Testing of Coffee**

25.    A putative class action on behalf of Kona coffee growers entitled *Corker, et al. v. Costco Wholesale Corporation, et al.*, Case 2:19-cv-00290 (W.D. Wash. Feb. 27, 2019) has used modern chemistry to identify the bad actors in the Kona marketplace specifically identifying Defendant.  *See* ECF No. 1 ¶¶ 51-126.

26.    Kona coffee is grown in a very specific geographic area on the Big Island of Hawaii.  That geographic area has a distinctive soil composition, due largely to its proximity to volcanoes.  And that geographic area has distinctive humidity and rainfall, due largely to its proximity to the Pacific Ocean.

27.    As a result of the local soil and rainfall, certain elements are present in high concentrations in Kona coffee beans.  If a particular package of coffee truly contains Kona coffee beans, these elements tend to be present in high concentrations.  If these elements are not present in high concentrations, then the package is unlikely to contain Kona coffee.

28.    Moreover, as a direct result of the local soil and rainfall, certain elements are **not** present in high concentrations in Kona coffee beans.  If a particular package of coffee truly contains only Kona coffee beans, then these elements tend **not** to be present in high concentrations.  If they are present in high concentrations, then the package is unlikely to contain Kona coffee.

29.    Scientists can examine the concentration of each of the elements that are found in Kona coffee beans, as well as the concentration of each of the elements that are **not** found in Kona coffee beans.  By combining this information, scientists can determine with high confidence whether a particular package is authentic Kona coffee.

30.    In practice, instead of looking at the concentration of an isolated element like barium (Ba) or nickel (Ni), scientists examine the ***ratio*** of the concentrations of ***pairs*** of elements.  The reason for this approach is simple.  If you were to roast coffee beans for ten minutes longer, you would not impact the amount of barium or nickel in

the sample, but you would burn away more of the overall coffee bean.  The concentration of barium would therefore increase, since it is defined as the mass of barium divided by the mass of the total bean.  And the concentration of nickel would therefore increase, since it is defined as the mass of nickel divided by the mass of the total bean.  But the ratio of the concentration of barium to the concentration of nickel would be unchanged.  And since the lab does not know how long particular coffee samples were roasted by the Defendant, the scientists focus on measures that do not change with roasting.

31.     Having tested barium and nickel, scientists have determined that authentic Kona coffee has a ratio of the concentration of barium to the concentration of nickel, also called the relative concentration, that falls within a certain range.  If an unknown sample has a relative concentration within that range, it may or may not be Kona.  But if an unknown sample has a relative concentration clearly outside that range, it is highly unlikely to be Kona.  (This analysis makes intuitive sense.  A veterinarian knows that dogs weigh between 1 and 325 pounds.  If that veterinarian sees an animal that weighs 100 pounds, which is clearly in the range of observed dog weights, the veterinarian would say that the animal may or may not be a dog.  But if that veterinarian sees an animal that weigh 500 pounds, which is well outside the range of previously-observed dog weights, the veterinarian would immediately note that the animal is highly unlikely to be a dog.).

32.     Determining the concentrations of particular elements and isotopes (which are simply variations of a particular element) is a process that requires significant scientific expertise and expensive instrumentation.  The scientific techniques of elemental analysis and isotopic analysis[1] are widely accepted in the

---

[1] Two different types of isotopic testing have been performed to confirm whether a defendant has falsely designated Kona as the origin of its coffee products. The first test examined strontium isotopes, and the second test examined hydrogen and oxygen isotopes.

scientific community and have been used in studies of various food products including coffee).

33. It is important to recognize that Defendant (who is likely to protest any and all aspects of scientific testing) could prove its innocence without retaining a single scientist, and without conducting a single lab test. Defendant could simply provide evidence of where it bought legitimate Kona coffee that it has been selling at retail.

34. It is also important to recognize that Defendant is a sophisticated participant in the premium coffee marketplace. On information and belief, Defendant employs professional coffee buyers whose job function is to source coffees for its products. In other words, much like a professional jeweler could never plausibly claim to be confused about the difference between a Rolex and a Timex, Defendant cannot plausibly claim to be confused about the coffee it is procuring. Defendant knows exactly what it is buying, and what it is selling.

**C.    Defendant's Wrongful Acts**

35. Hawaiian Isles falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging. Hawaiian Isles advertises its coffee products nationally on the Internet and with digital marketing campaigns through social media sites such as Facebook. With its marketing campaigns, Hawaiian Isles uses deceptive taglines and slogans such as "Taste the Kona Difference," "Bring Hawaii Home," "Give the Gift of Aloha," "Drink Kona Coffee and Relax," and "I Want My Toes in the Sand and Kona Coffee in My Hand," among others. The deceptive slogans are designed to mislead consumers into believing that Hawaiian Isles coffee products primarily contain coffee from Hawaii, and more specifically the Kona District of Hawaii. In addition, Hawaiian Isles uses deceptive names for its products intended to mislead consumers into believing that the coffee products contain a significant amount of Kona coffee. The deceptive product

names include "Kona Classic," "Kona Sunrise," "Kona Hazelnut," and "Kona Vanilla Macadamia Nut."  Hawaiian Isles also designs its product packaging with imagery, text, and advertising slogans intended to mislead the consumer into believing that the coffee product contains coffee beans predominantly, if not exclusively, grown in Hawaii, and specifically in the Kona District.  The deceptive marketing slogans, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name.  Defendant deliberately mislead the consumer into believing that Hawaiian Isles coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Hawaiian Isles charges for ordinary commodity coffee.

36.    Below are several examples of the deceptive "Kona" products sold by Hawaiian Isles.

   

**Figure 2**                                          **Figure 3**

The packages themselves state "Made in Hawaii" on a banner on the front, above a map of Hawaii and a photograph of palm trees at sunset.  The marketing copy on the side of the package states that the contents were "freshly roasted and packaged in Hawaii."  The package also states that "Kona Coffee is grown on the Big Island's Kona Coast."  Given Hawaiian Isles' unequivocal designation of Kona" as the origin

of the coffee in its products, consumers buying these products would reasonably believe that Kona, and only Kona, was the origin of the coffee contained therein.

37.    But while consumers would reasonably believe that the packages in Figures 2 and 3 contain coffee that originates exclusively from Kona, the lab tests tell a different story.  On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, the science indicates that the coffee contained in the Hawaiian Isles packages is highly unlikely to originate from Kona.



**Figure 4**

The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona.  Again, the science indicates that the coffee contained in the Hawaiian Isles packages is highly unlikely to originate from Kona.  In other words, Hawaiian Isles' designation of Kona as the origin of the coffee in these products is false.



38.    In fact, these bags appear to contain very little Kona coffee, if any.  As a simple indicator, note that authentic Kona has an average of less than forty times (40x) as much manganese as nickel.  In contrast, some samples have from Defendant's products have one hundred twenty times (120x) as much manganese as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there must be very little Kona in this package.  In other words, Hawaiian Isles' designation of Kona as the origin of the coffee in these products is false.

39.    Even a consumer understanding this package to be a blend of Kona and other coffees (which is a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.  In addition, consumers would expect that a Kona blend would contain at least enough Kona coffee that a consumer would be able to taste its presence.  Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

1

## CLASS ALLEGATIONS

2      40.    Plaintiff seeks to represent a class defined as all persons in the United

3  States who purchased the Products (the "Class").  Excluded from the Class are persons

4  who made such purchases for purpose of resale.

5      41.    Plaintiff also seeks to represent a Subclass of all Class Members who

6  purchased the Products in California (the "California Subclass" or "Subclass").

7      42.    At this time, Plaintiff does not know the exact number of members of the

8  Class and Subclass; however, given the nature of the claims and the number of retail

9  stores in the United States selling the Products, Plaintiff believes that Class and

10 Subclass members are so numerous that joinder of all members is impracticable.

11     43.    There is a well-defined community of interest in the questions of law and

12 fact involved in this case.  Questions of law and fact common to the members of the

13 Class that predominate over questions that may affect individual Class members

14 include:

15         a.  the chemical composition of a real Kona coffee bean, as established

16             through elemental abundance analysis and isotopic analysis;

17         b.  the chemical composition of the coffee beans sold by Defendant, also as

18             established through elemental abundance analysis and isotopic analysis;

19         c.  whether Defendant made false or misleading representations as to the

20             geographic origin of coffee labeled and sold as "Kona" coffee;

21         d.  whether the Defendant's marketing, distribution, and/or sale of products

22             falsely or misleadingly labeled as "Kona" coffee has created or is likely

23             to mislead a reasonable consumer;

24         e.  whether the Defendant's false or misleading representations as to the

25             geographic origin of coffee labeled and sold as "Kona" coffee violates

26             the CLRA, FAL and UCL;

27

28

f.  the nature and extent of the damages to Plaintiffs and the Class members;

g.  the nature and extent of Defendant's profits earned as a result of falsely or misleadingly designating "Kona" as the origin of its coffee products;

h.  whether Defendant's conduct was unfair and/or deceptive;

i.  whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class;

j.  whether Defendant breached implied warranties to Plaintiff and the Class;

k.  whether Defendant breached express warranties to Plaintiff and the Class; and

l.  whether Plaintiff and the Class have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of its damages.

44.    Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, the Kona Labeled Coffee Products and Plaintiff sustained damages from Defendant's wrongful conduct.

45.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Class or the Subclass.

46.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

47.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the

Class and the Subclass, thereby making appropriate equitable relief with respect to the Class and the Subclass as a whole.

48.     The prosecution of separate actions by members of the Class and the Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the Class and the Subclass even where certain Class members are not parties to such actions.

## CAUSES OF ACTION

## COUNT I

### (Unfair and Deceptive Acts and Practices In Violation of the California Consumers Legal Remedies Act) (Injunctive Relief Only)

49.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

50.     Plaintiff DeArmey brings this cause of action on behalf of himself and members of the California Subclass.

51.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

52.     Mr. DeArmey and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because he bought the Products for personal, family, or household purposes.

53.     Mr. DeArmey, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

54.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the

CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

55. As alleged more fully above, Defendant has violated the CLRA by marketing the Kona Labeled Coffee Products as originating from the Kona District, when in fact the Products do not originate from the Kona District and are instead commodity coffee beans.

56. As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5) and (a)(7).

57. Plaintiff DeArmey seeks to enjoin the sale of the Kona Labeled Coffee Products, or to require Defendant to refrain from misleading consumers into believing the Products originate from the Kona District."

58. CLRA § 1782 NOTICE. On March 5, 2019, a CLRA demand letter was sent to Defendant via certified mail that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Defendant correct, repair, replace or other rectify the unlawful, unfair, false and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. If Defendant fails to comply with the letter. Plaintiff intends to amend this Complaint, on behalf of himself and all other members of the California Subclass, to seek compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices in addition to the injunctive relief identified above.

## COUNT II
### (Violation California's Unfair Competition Law)

59. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

60. Plaintiff DeArmey brings this cause of action on behalf of himself and members of the California Subclass.

61.   By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

62.   Defendant has violated the UCL's proscription against engaging in *unlawful* conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above.

63.   Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

64.   As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

65.   Defendant's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

66.   Mr. DeArmey and the other California Subclass members have suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled product.

67.   Defendant's deceptive marketing and labeling the Products as originating from the Kona District provides no benefit to consumers or competition.

68.   Plaintiff and the other California Subclass members had no way of reasonably knowing that the Kona Labeled Coffee Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

69.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Mr. DeArmey and the other members of the California Subclass.

70.     Defendant's violations of the UCL continue to this day.

71.     Pursuant to California Business and Professional Code § 17203, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

(a)     provide restitution to Mr. DeArmey and the other California Subclass members;

(b)     disgorge all revenues obtained as a result of violations of the UCL; and

(c)     pay Mr. DeArmey and the California Subclass' attorney's fees and costs.

## COUNT III

### (Violation of California's False Advertising Law)

72.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

73.     Plaintiff DeArmey brings this cause of action on behalf of himself and members of the California Subclass.

74.     California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and

which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

75.    Defendant has represented and continues to represent to the public, including Plaintiff and members of the California, through Defendant's deceptive packaging and marketing, that the Kona Labeled Coffee Products originate from the Kona District.  Defendant's representations are misleading because the coffee contained in the Kona Labeled Coffee Products did not originate from the Kona District.  Because Defendant has disseminated misleading information regarding the Kona Labeled Coffee Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representation was and continues to be misleading, Defendant has violated the FAL.

76.    Furthermore, Defendant knows, knew or should have known through the exercise of reasonable care that such representation was and continues to be unauthorized and misleading.

77.    As a result of Defendant's false advertising, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the California Subclass.

78.    Plaintiff requests that this Court cause Defendant to restore this fraudulently obtained money to Plaintiffs and members of the California Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff and members of the California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## **COUNT IV**

### **(Fraud)**

79.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

80.     Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

81.     As discussed above, Defendant represented the Kona Labeled Coffee Products as originating from the Kona District, when in fact the Products do not originate from the Kona District and are instead commodity coffee beans.

82.     The false and misleading representations and omissions were made with knowledge of their falsehood.

83.     The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the Class and California Subclass reasonably and justifiably relied and were intended to induce and actually induced Plaintiff and Class members to purchase the Kona Labeled Coffee Products.

84.     The fraudulent actions of defendant caused damage to Plaintiff and members of the Class, who are entitled to damages and other legal and equitable relief as a result.

## **COUNT IV**

### **(Unjust Enrichment)**

85.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

86.     Plaintiff brings this claim individually and on behalf of members of the Class and Subclass against Defendant.

87.     Plaintiff and Class members conferred benefits on Defendant by purchasing the Kona Labeled Coffee Products.

88.     Defendant has knowledge of such benefits.

89.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Kona Labeled Coffee Products. Retention of those moneys under these circumstances is unjust and inequitable because Defendant fraudulently represented in advertising and on packaging that the Products originated from the Kona District when in fact the Products do not originate from the Kona District and are instead commodity coffee beans.

90.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT V

### (Breach of the Implied Warranty of Merchantability)

91.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

92.     Plaintiff brings this claim individually and on behalf of members of the Class and Subclass against Defendant

93.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that that the Kona Labeled Coffee Products are merchantable as premium authentic Kona coffee.

94.     Defendant breached the warranty implied in the contract for the sale of the Kona Labeled Coffee Products because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2) (listing requirements for merchantability).  As a result, Plaintiff and Class

members did not receive the goods as impliedly warranted by Defendant to be merchantable.

95.    Plaintiff and Class members purchased the Kona Labeled Coffee Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

96.    The products were not altered by Plaintiff or Class members.

97.    The products were defective when they left the exclusive control of Defendant.

98.    Defendant knew that the Kona Labeled Coffee Products would be purchased and used without additional testing by Plaintiff and Class members.

99.    The Kona Labeled Coffee Products were defectively designed and unfit for their intended purpose and Plaintiff and Class members did not receive the goods as warranted.

100.   As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the Kona Labeled Coffee Products if they knew the truth about the Products and the Products they received was worth substantially less than the product they were promised and expected.

## <u>COUNT VI</u>

### **(Breach of Express Warranty)**

101.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

102.   Plaintiff bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

103.   Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

Furthermore, any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

104.   Defendant, as the designer, manufacturer, marketer, distributor, and seller made affirmations as to the origin, quality and contents of the the Kona Labeled Coffee Products with the prominent placement of "Kona" on the Products. The "Kona" description also creates an express warranty that the Kona Labeled Coffee Products will conform to that description.

105.   As established through the scientific testing to date, the coffee contained in the accused products does not conform to such affirmations of fact and/or descriptions of the "Kona" coffee products at issue.

106.   Plaintiff and member of the Class reasonably and justifiably relied on the forgoing express warranties, believing that the accused coffee products purchased from Defendants conformed to these express warranties. Plaintiff and members of the Class did not obtain the full value of the products as represented on the labels, packaging and marketing materials.  If Plaintiff and members of the Class had known of the Kona Labeled Coffee Products were simply commodity coffee beans, they would not have purchased the products, or they would not have been willing to pay the inflated price.

107.   Plaintiff and the Class members were injured as a direct and proximate result of Defendant's breach because:  (a) they would not have purchased the Products on the same terms if the truth concerning Defendant's Products had been known; (b) they paid a price premium due to Defendant's misrepresentations about the Products; and (c) the Products were not of the quality or nature promised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and members of the Class and California Subclass as follows:

A.   For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

B.   For an order declaring that Defendant's conduct violates the statutes referenced herein;

C.   For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

D.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.   For injunctive relief enjoining the illegals acts detailed herein;

F.   For prejudgment interest on all amounts awarded;

G.   For an order of restitution and all other forms of equitable monetary relief;

H.   For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 5, 2019                  Respectfully submitted,

**BURSOR & FISHER, P.A.**


By:_____*/s/ L. Timothy Fisher*_____
                     L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Thomas A. Reyda (State Bar No. 312632)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
         jsmith@bursor.com
         treyda@bursor.com

**REICH RADCLIFFE & HOOVER LLP**
Marc G. Reich (State Bar No. 159936)
Adam T. Hoover (State Bar No. 243226)
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Telephone: (949) 975-0512
Email: mgr@reichradcliffe.com
       adhoover@reichradcliffe.com

*Counsel for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Michael DeArmey in this action. Plaintiff Michael DeArmey resides in Mission Viejo, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 5th day of March 2019.


                                                    */s/ L. Timothy Fisher*
                                                    L. Timothy Fisher